**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES *ex rel.* DANIEL FOSTER, Plaintiff, | ) | Civil Action No. 26-cv-10383-NMG |
| v. | ) | |
| CITISOFT, INC., Defendant. | ) | |

## AMENDED FALSE CLAIMS ACT COMPLAINT

Daniel Foster ("Relator") brings this action as a *qui tam* relator on behalf of the United States against Citisoft, Inc. ("Citisoft"), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729-33, to recover damages, penalties, attorney fees and costs, and other relief.

### Introduction

1. On May 1, 2020, Citisoft, Inc. ("Citisoft"), fraudulently obtained a $1,528,517 first-draw Paycheck Protection Program ("PPP") loan.

2. Citisoft was (and is) a wholly-owned subsidiary of Tech Mahindra Limited ("Tech Mahindra"), an India-based company that had numerous other United States subsidiaries.

3. Citisoft did not qualify for its PPP loan under any of the applicable size standards for PPP loans because Tech Mahindra's United States subsidiaries – all affiliates of Citisoft – had thousands of employees in the United States and because Tech Mahindra had billions of dollars in annual revenues and net worth, and hundreds of millions of dollars in after-tax profits.

4. On its first draw PPP loan application, Citisoft failed to account for its affiliations with Tech Mahindra or Tech Mahindra's other subsidiaries.

5. Had Citisoft been candid about its affiliates' employees, revenues, net worth, and after-tax profits on its PPP loan application, Citisoft would not have received its PPP loan and United States taxpayers would have saved nearly $1.6 million in forgiven loan proceeds and lender processing fees.

6. Relator is an original source of the Complaint allegations. Prior to the filing of his original Complaint, Relator voluntarily made substantive disclosures to the government of facts and evidence underlying the allegations in the Complaint.

7. This action is filed *in camera* and under seal pursuant to the requirements of the False Claims Act, 31 U.S.C. § 3730(b)(2).

## Jurisdiction and Venue

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3732, which confers jurisdiction over actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

9. This Court may exercise personal jurisdiction over Citisoft, and venue is appropriate in this Court, under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2), because Citisoft resides in this District and a substantial part of the events or omissions giving rise to Relator's claim occurred in this District.

## The Parties

10. Relator is a dual citizen of the United States and Germany. Relator first became aware of the issue of PPP fraud when he discovered that an organization with which he was affiliated had obtained PPP funds improperly. Sensing a larger problem, Relator began to use his digital investigative skills to identify other instances of apparent PPP fraud, including Citisoft's fraud.

11. Defendant Citisoft is a Delaware corporation with a principal place of business at 303 Congress Street, 5th floor, Boston, Massachusetts 02210. According to Tech Mahindra's 2019-2020 Annual Report, Tech Mahindra owned 100 percent of Citisoft in those years. Further, two of Citisoft's three directors – Lakshmanan Chidambaram and Vikram Nair – were also Tech Mahindra executives. Mr. Chidambaram was CEO of Tech Mahindra (Americas) Inc. ("Tech Mahindra Americas"), another wholly-owned subsidiary of Tech Mahindra. Mr. Nair was the head of Tech Mahindra's Europe business.

**Background on Citisoft's Affiliates in the United States**

12. The table below shows some of the United States subsidiaries that Tech Mahindra identified in its 2019-2020 Annual Report:

| **Name of Subsidiary** | **Location** | **% Holding** |
|---|---|---|
| Tech Mahindra (Americas) Inc. | Plano, Texas | 100% |
| Tech Talenta Inc. | Plano, Texas | 100% |
| Lightbridge Communications Corporation | Plano, Texas | 100% |
| Tech Mahindra Network Services International Inc. | Plano, Texas | 100% |
| Tech Mahindra Technologies, Inc. | Wilmington, Delaware | 100% |
| Tech Mahindra LLC | Wilmington, Delaware | 100% |
| Citisoft Inc. | Boston, Massachusetts | 100% |
| The CJS Solutions Group, LLC | Jacksonville, Florida | 92.88% |
| Tech Mahindra Healthcare Systems Holdings LLC | Wilmington, Delaware | 92.88% |
| Tech Mahindra Healthcare LLC | Wilmington, Delaware | 92.88% |
| Mad*Pow Media Solutions, LLC | Portsmouth, New Hampshire | 65% |
| Born Group Inc. | Wilmington, Delaware | 100% |
| Comviva Technologies USA Inc | Jacksonville, Florida | 99.99% |
| Zen3 Infosolutions (America) Inc. | Seattle, Washington | 100% |
| Oslo Solutions LLC | United States | 100% |
| Zen3 Infosolutions Inc. | United States | 100% |
| Tech Mahindra Cerium Systems Inc. | Santa Clara, California | 100% |

13. According to Forms 5500 that Tech Mahindra Americas filed with the United States Department of Labor, Tech Mahindra America's 401(k) plan had 8,231 active participants at the beginning of 2019, 9,209 active participants at the end of 2019, 7,255 active participants at the beginning of 2020, and 6,348 active participants at the end of 2020.

14. At least three of Tech Mahindra's other United States subsidiaries – The CJS Solutions Group, LLC, Mad*Pow Media Solutions, LLC, and Zen3 Infosolutions (America) Inc. – would have qualified for first draw PPP loans absent their affiliation with Tech Mahindra, because each of them had less than 500 employees on a standalone basis. On their respective Forms 5500 for 2020, The CJS Solutions Group, LLC, listed 203 active participants, Mad*Pow Media Solutions, LLC, listed 88 active participants, and Zen3 Infosolutions (America) Inc. listed 120 active participants as of the beginning of 2020. But none of those three companies applied for a PPP loan.

## Legal Background

### A. The False Claims Act

15. The False Claims Act provides, in pertinent part, that any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . .
>
> * * *
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

16. For purposes of the False Claims Act, "the terms 'knowing' and 'knowingly' mean that a person, with respect to information[,] (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). No proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1)(B).

**B. The Paycheck Protection Program**

17. In March 2020, through the CARES Act, Pub. Law 116–136, Congress established the PPP to provide economic relief for small businesses during the coronavirus pandemic.

18. Under the first round of the PPP, an eligible business could apply for a loan of up to 2.5 times its average monthly payroll during 2019, subject to a maximum amount of $10 million. *See* 15 U.S.C. § 636(a)(36)(E); *see also* Small Business Administration ("SBA") Form 2483, Instructions.

19. An applicant for a first draw PPP loan could qualify as an eligible business under any of three standards:

> (1) having an average of no more than 500 employees during 2019 or during the 12 months prior to applying for a first draw PPP loan, *see* 15 U.S.C. § 636(a)(36)(D)(i)(I) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 14 (April 6, 2020);
>
> (2) the SBA employee-based or revenue-based size standard corresponding to the business's primary industry, *see* 15 U.S.C. § 636(a)(36)(D)(i)(II) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 2; or
>
> (3) the SBA's alternative size standard, which provided that the business must have (a) a maximum tangible net worth of not more than $15 million, and (b) average net income after tax of not more than $5 million for the business's two full preceding fiscal years as of March 27, 2020, *see* 86 Fed. Reg. 15083, 15085 n.5 (Mar. 22, 2021) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 2.

20. Under each of these eligibility standards, the law required the business to include its affiliates in assessing whether the business met the standard. *See* 15 U.S.C. § 636(a)(36)(D)(iv). The affiliation rule in effect at the time provided that "[c]oncerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both." 13 C.F.R. § 121.301(f) (2019) (*available at* 81 Fed. Reg. 41423, 41428 (June 27, 2016)). The rule further elaborated that affiliation could arise under various circumstances, including:

> Affiliation based on ownership. For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.
>
> Affiliation based on management. Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one o[r] more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

*Id.*; *see also* SBA, *Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program* (April 3, 2020).

21. In guidance that SBA issued on April 6, 2020, the agency included the following:

> **Question:** Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?
>
> **Answer:** Yes. Borrowers must apply the affiliation rules set forth in SBA's Interim Final Rule on Affiliation. A borrower must certify on the Borrower Application Form that the borrower is eligible to receive a PPP loan, and that

> certification means that the borrower is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), meets the applicable SBA employee-based or revenue-based size standard, or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable. SBA's existing affiliation exclusions apply to the PPP, including, for example the exclusions under 13 CFR 121.103(b)(2).

SBA, *PPP Loans Frequently Asked Questions*, Question 5 (Apr. 6, 2020).

22. When the PPP first came into effect, SBA issued guidance that "[y]ou are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is *in the United States* . . . and [y]ou are . . . subject to SBA's affiliation rules under 13 CFR 121.301(f)." 85 Fed. Reg. 20811, 20812 (April 15, 2020) (emphasis added). On May 5, 2020, SBA revised its guidance to state that a PPP "applicant must count all of its employees and the employees of its U.S. and foreign affiliates." 85 Fed. Reg. 30835, 30836 (May 21, 2020).

23. The statutes creating the PPP program provided that SBA would reimburse PPP lenders for processing at specified rates. As relevant here, the rate for first draw loans of more than $350,000 and up to $2,000,000 was 3 percent. *See* 15 U.S.C. § 636(a)(36)(P)(i)(I)(bb).

24. The PPP also provided for full forgiveness of a loan so long as the borrower used the loan proceeds in accordance with the PPP rules and did not reduce the number of its employees. *See* 15 U.S.C. § 636m; SBA, *Frequently Asked Questions (FAQs) on PPP Loan Forgiveness* (Oct. 13, 2020). To the extent a borrower reduced the average number of its employees in the months after receiving the loan, the PPP created a formula for reducing the loan forgiveness amount accordingly. *See* 15 U.S.C. § 636m(d)(2).

## **Background On Citisoft's PPP Loan**

25. On May 1, 2020, SBA approved a first draw loan to Citisoft in the amount of $1,528,517 through Bank of America. On its application for this loan, Citisoft listed 50 jobs and classified itself under NAICS code 541512 (Computer Systems Design Services). In 2020, this

industry had a size standard of $30 million in revenue. On May 21, 2021, SBA forgave Citisoft's first draw loan. The loan forgiveness amount, including accrued interest, was $1,544,556. SBA also paid Bank of America a lender processing fee of $45,855.51 in connection with the loan.

**Fraud Allegations**

26. Citisoft fraudulently obtained its PPP loan because it failed to disclose that it did not qualify for the loan under any of the three applicable standards.

27. First, together with its affiliates, including Tech Mahindra Americas, Citisoft had thousands of employees *in the United States* and thus exceeded the 500-employee limit for first draw PPP loans, even under the guidance SBA had provided at the time of the loan.

28. Second, together with its affiliate and parent, Tech Mahindra, Citisoft had far more than $30 million in annual revenue, the applicable size standard for businesses in Citisoft's industry. According to Tech Mahindra's 2019-2020 Annual Report, Tech Mahindra had revenue of $5.18 billion in the year ending March 31, 2020.

*29.* Third, together with its affiliate and parent, Tech Mahindra, Citisoft had far more than $15 million in net worth and $5 million in average net income after tax, the required elements of SBA's alternative size standard. According to Tech Mahindra's 2019-2020 Annual Report, Tech Mahindra had net worth of $2.88 billion as of March 30, 2020, and it had profit after tax of $615 million in 2019 and $567 million in 2020.

30. Had Citisoft been candid about its affiliates' employees, revenues, net worth, and profit, it would not have received its first draw PPP loan.

31. Even if Citisoft applied for its PPP loan without consulting with Tech Mahindra, the parent company was well aware of the loan by the time Citisoft was seeking loan forgiveness. In its 2021 financial statements, Tech Mahindra reported Citisoft's PPP loan and

noted that, as of March 31, 2021, "forgiveness of the loan has been applied for but has not been approved." At that point, knowing that all of its United States subsidiaries, including Citisoft, were not eligible for PPP loans because of Tech Mahindra Americas' size, Tech Mahindra, whose executives made up two-thirds of Citisoft's board of directors, should have caused Citisoft to withdraw its forgiveness application.

## COUNT I
## False Claims Act, 31 U.S.C. § 3729(a)(1)(A)

32. Relator re-alleges and incorporates by reference all paragraphs of this Amended Complaint set out above as if fully set forth herein.

33. Through the acts set forth above, Citisoft knowingly presented, or caused to be presented, false or fraudulent claims for payment to SBA for its PPP loan and loan forgiveness to which it was not entitled.

34. By virtue of the false or fraudulent claims that Citisoft knowingly made or presented, or caused to be made or presented, Citisoft violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), and the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## COUNT II
## False Claims Act, 31 U.S.C. § 3729(a)(1)(B)

35. Relator re-alleges and incorporates by reference all paragraphs of this Amended Complaint set out above as if fully set forth herein.

36. Through the acts set forth above, Citisoft knowingly made, used, or caused to be made and used, false records and statements material to the payment of false or fraudulent claims by SBA for its PPP loan and loan forgiveness to which it was not entitled.

37. By virtue of the false records and statements Citsoft made, used, or caused to be made or used, Citisoft violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), and the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

**Prayer for Relief**

WHEREFORE, Relator demands and prays for the following relief:

1. That judgment be entered in favor of the United States for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with all such further relief as may be just and proper;
2. An award to Relator of a percentage of the proceeds of the action in accordance with 31 U.S.C. § 3730(d);
3. An award to Relator of his costs and reasonable attorney fees for prosecuting this action; and
4. All other relief as may be required or authorized by law and in the interests of justice.

Dated: October 13, 2026

Respectfully submitted,

DANIEL FOSTER

By his attorney

/s/ *Gregg Shapiro*

Gregg Shapiro (BBO No. 642069)
Gregg Shapiro Law, LLC
101 Federal Street, Suite 1900
Boston, MA 02110
Tel: 617-582-3875
gshapiro@greggshapirolaw.com